UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JEFFREY CHARTIER,
Defendant,

-against-

UNITED STATES OF AMERICA.
----------------------------------X

MEMORANDUM and ORDER
17-CR-0372(JS)

APPEARANCES
For Defendant: Jeffrey Chartier, Pro se
#75150-112
FCI Coleman Low
FEDERAL CORRECTIONAL INSTITUTION
Satellite Camp
P.O. Box 1027
Coleman, Florida 33521

For the Government: Whitman G.S. Knapp, Esq.
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

SEYBERT, District Judge:

Presently before the Court is the pro se Rule 60(b)(4) Motion of Jeffrey Chartier ("Chartier" or "Defendant"), seeking to vacate the criminal judgment against him, alleging said judgment is void (hereafter, the "Rule 60(b) Motion"). (See ECF No. 1452.) Chartier supplements said Motion with a self-styled "Renewed Appointments Clause Motion" (hereafter, the "Renewed Motion"; together with the Rule 60(b) Motion, the "Motions") challenging "whether the prosecutors who obtained and now defend [Defendant's] conviction held valid appointment authority under Article II of

the Constitution and the Appointments Clause." (See ECF No. 1472.) The Government opposes the Motions. (See Opp'n, ECF No. 1483.) For the reasons that follow, the Rule 60(b) Motion and Renewed Motion are **DENIED** in their entireties.

BACKGROUND

I. Factual Background, Generally

The Court presumes the parties' familiarity with the factual background of this case. See generally United States v. Chartier, No. 17-CR-0373, 2021 WL 3795352 (E.D.N.Y. Aug. 26, 2021) (denying co-defendants' motions for acquittal or, alternatively, new trials[1]) (hereafter, the "Post-Trial Decision"), aff'd, Nos. 22-3125 (L), 23-6080 (CON), 2024 WL 3617023 (2d Cir. Aug. 1, 2024) (summary order). For the reader's convenience, the Court states generally that Chartier was convicted of, inter alia, securities fraud and conspiracy to commit securities fraud. See id. at *1. To perpetrate the frauds, Chartier employed "a pump-and-dump boiler room [(hereafter, the "Boiler Room")] that pushed penny stocks on mostly elderly investors" in microcap companies in which Chartier had ownership interests (hereafter, the "Companies"). Id.

[1] More accurately, the Court granted, in part, Chartier's motion for judgment of acquittal or, in the alternative, for a new trial to the extent it vacated his conviction as to Count Sixteen of the subject superseding indictment. See Post-Trial Decision, 2021 WL 3795352, at *1, *26-29. In all other respects, Chartier's motion was denied. See id. at *18, *52.

> The Boiler Room cold-called potential victims and used high-pressure sales tactics and fraudulent misrepresentations and omissions to induce them to purchase stock in the companies the Boiler Room was promoting. Once the Boiler Room's employees had convinced an investor to place an order for a certain number of shares at a certain price, the Boiler Room would contact Chartier [or others] . . . so that they could sell their shares to fill the incoming buy order. The purposes of the scheme included artificially inflating the [C]ompanies' stock prices and allowing Chartier [and others] . . . to sell their shares at a profit.

Id.

II. Relevant Procedural Background

After Chartier filed his Section 2255 habeas Petition (See ECF No. 1475) on November 3, 2025, on February 2, 2026, he filed the instant Rule 60(b) Motion. According to his Rule 60(b) Motion, Defendant "moves to vacate the judgment" against him "as void", with Defendant "challeng[ing] the Court's power to adjudicate". (Rule 60(b) Motion at 1.) His bases for asserting the Judgment (see ECF No. 1252) is void are: (1) a general assertion "the prosecution here proceeded without proof of continuous constitutional authority traceable to a sitting President through a lawfully serving Attorney General" (Motion at 2); and (2) an "actual conflict of interest affecting defense counsel's performance", thereby depriving him of due process (id.). In sum, Defendant argues:

> Due process requires a real contest between lawful accuser and loyal defense. Here, the prosecution lacked a lawful accuser, and the defense lacked constitutional loyalty. The proceeding therefore did not qualify as a judicial act under Article III. A judgment entered without due process is void.

(Id.) Asserting the Court "never acquired criminal jurisdiction," Defendant maintains "[t]he judgment is void and must be vacated." (Id.)

On February 4, 2026, the Court issued an order, ruling on three other motions filed by Defendant, to wit: an extension motion; an appointment of counsel motion; and a bond motion. (See February 2026 Order, ECF No. 1453.) Relevant here, as to the extension motion, pursuant to which Defendant sought an extension to file his Petition, the Court denied it as moot, finding Defendant's November 3rd filing of the Petition, attached to the extension motion, was timely. (See February 2026 Order at 3-6.) Accordingly, the Court proceeded to order the Government to show cause why Defendant's Petition should not be granted. (See id. at 11.) In conjunction with the Court's show-cause directive, it further ordered the Government to "submit affidavits from counsel responding to [Defendant]'s ineffective-assistance claims". (Id. at 12.) The Government complied with the Court's show-cause order. (See Petition Response, ECF No. 1477.) Although afforded the

opportunity to do so, Defendant did not file a reply.[2] The Petition is deemed to be fully briefed as of August 7, 2026 and remains sub judice.

While briefing on Defendant's Petition was under way, on April 24, 2026, Defendant filed his Renewed Motion, which he asserts raises an independent argument, separate from his ineffective assistance claims presented in his Petition.[3] (See Renewed Motion at Part IV.) Via his Renewed Motion, Defendant further elaborates upon his jurisdictional challenge. (See id. at Part III.) He focuses upon whether the U.S. Attorney for the Eastern District of New York, and those prosecutors under him, was properly appointed and, therefore, authorized to prosecute him. (See id. at Part III(B) & (C).) According to Defendant, the appointment chain, from the U.S. Attorney and delegated to Assistant U.S. Attorneys who prosecuted this case, "must be

[2] Defendant was afforded an extension of time, to August 7, 2026, to file his Reply to the Government's Response. (See July 1, 2026 Endorsed ORDER, ECF No. 1482; cf. Apr. 4, 2026 Docket Text ORDER.) As of August 19, 2026, Defendant has not filed a Reply. (See Case Docket, in toto.)

[3] As the Government notes, in denying without prejudice Chartier's appointment motion, the Court preserved Chartier's "right to renew his Motion Seeking Appointment of Counsel (ECF 1445), not his right to renew (much less supplement) his Rule 60(b)(4) Motion to Vacate Void Judgment." (Opp'n at 2 n.3 (citing February 2026 Order at 3).) The Government is correct. Nonetheless, in its discretion, the Court considers Chartier's Renewed Motion as supplementing his Rule 60(b) Motion.

established on the record before this proceeding advances further." (Id. at Part VI.)

On August 13, 2026, the Court directed the Government to file its Response to the Rule 60(b) Motion and the Renewed Motion. (See Aug. 13, 2026 Elec. Sched. Order.) The Government has complied. (See Opp'n.) It argues the Motions are actually an untimely Section 2255 habeas petition, "challeng[ing] the validity of the underlying criminal judgment"; as such, they fall outside of the scope of Rule 60(b). (Id. at 3 (collecting cases).) The Court agrees the Motions fall outside the Scope of Rule 60(b).

DISCUSSION

I. The Applicable Law

As Honorable Pamela K. Chen of this District recently wrote:

> "Rule 60(b) permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or for other reason that justifies relief." Lilakos v. New York City, No. 14-CV-5288 (PKC) (LB), 2016 WL 6768943, at *1 (E.D.N.Y. Nov. 15, 2016) (quoting Dziennik v. Sealift, Inc., No. 04-CV-4659 (DLI) (MDG), 2015 WL 1469323, at *2 (E.D.N.Y. Mar. 30, 2015)). "The decision whether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the district court," Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012), and because Rule 60(b) is a means of "extraordinary judicial relief," it is properly invoked "only upon a showing of exceptional circumstances," Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (collecting cases). Extraordinary

> circumstances include "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." Buck v. Davis, 580 U.S. 100, 123 (2017) (quotation marks omitted). A Rule 60(b) motion, however, is not a substitute for an appeal or a vehicle for relitigating an issue already decided. See Stevens, 676 F.3d at 67; United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009); Gustavia Home, LLC v. Hoyer, No. 16-CV-4015 (PKC) (VMS), 2022 WL 875096, at *2 (E.D.N.Y. Mar. 23, 2022).

Stinn v. United States, No. 11-CV-2071, 2024 WL 4989241, at *7 (E.D.N.Y. Dec. 5, 2024), aff'd, No. 25-293, 2026 WL 2384057 (2d Cir. Aug. 17, 2026).[4] Particular to Rule 60(b)(4), it permits a court to "relieve a party . . . from a final judgment, order, or proceeding" if "the judgment is void". Fed. R. Civ. P. 60(b)(4).

Because "[h]abeas is a civil proceeding", a criminal defendant may use a Rule 60(b) motion to challenge a judgment rendered on an initial habeas petition. Harris v. United States, 367 F.3d 74, 81; see also id. at 77 ("[R]elief under Rule 60(b) is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction." (relying upon Rodriguez v. Mitchell, 252 F.3d 191 (2d Cir. 2001)).

[4] The Appellate Court noted: "Stinn did not appeal the district court's denial of his Rule 60(b) relief, and we thus consider that argument abandoned." 2026 WL 2384057, at *3 n.3 (citation omitted).

Honorable Lawrence E. Kahn of the Northern District of New York elucidates:

> "A motion under Rule 60(b) and a [§ 2255 petition] have different objectives." Rodriguez, 252 F.3d at 198. A § 2255 petition seeks to vacate, set aside or correct a sentence imposed by the federal court. A motion pursuant to Rule 60(b) does not seek such relief. "It seeks only to vacate the federal court judgment [concerning] the prior habeas petition. The grant of such a motion would not have the effect of invalidating the [federal] conviction. It would merely reinstate the [previous] petition for habeas, opening the way for further proceedings seeking ultimately to vacate the [federal] conviction." Id. Therefore, courts will only decide a motion under Rule 60(b) if it relates "to the integrity of the federal habeas proceeding, not the integrity of the . . . criminal trial." Id. at 199.

Ira Harris v. United States, 357 F. Supp. 2d 524, 526–27 (N.D.N.Y. 2005) (collecting cases). Therefore:

> [w]hen a court is presented with a Rule 60(b) motion that "attacks the underlying conviction," the Court has "two procedural options: (i) the court may treat the Rule 60(b) motion as 'a second or successive' habeas petition, in which case it should be transferred to [the Second Circuit] for possible certification, or (ii) the court may simply deny the portion of the motion attacking the underlying conviction 'as beyond the scope of Rule 60(b).' "

Stinn, 2024 WL 4989241, at *9 (quoting Harris, 367 F.3d at 82).

II. Analysis

A. Rule 60(b) Relief is Unavailable

Here, there is no dispute the Motions are an attack of the underlying criminal conviction. (See, e.g., Rule 60(b) Motion at Parts I & V; Renewed Motin at Part VI.) However, because the Court has not yet rendered its decision on Defendant's Petition, the first procedural option of treating Defendant's Motions as a second or successive habeas petition is not viable in this instance. Instead, the second procedural option must be followed: The Motions are denied as beyond the scope of Rule 60(b). And, in any event, (1) based upon the record of this case, (2) in its discretion, and (3) because he has failed to demonstrate any extraordinary circumstance warranting Rule 60(b) relief, the Court would find no risk of injustice to the parties by permitting the Judgment to stand or of undermining the public's confidence in the judicial process; this is a further reason for denying the Motions.

B. If the Motions Were Deemed to Amend the Habeas Petition

Furthermore, even if the Court were to construe the Motions as amending Defendant's pending habeas Petition, Defendant's arguments raised in the Motions would be rejected as unavailing to warrant habeas relief. The Court explains.

1. Regarding the Jurisdictional Challenge

Defendant's jurisdictional challenge is multi-tiered; his position is understood to be: (1) the Judgment is void because

the Court lacked jurisdiction, and that is so because (2) the Indictment was void ab initio, since (3) the AUSA appeared before the grand jury allegedly without constitutionally and statutorily valid authority. (See Rule 60(b) Motion at Part III(C).) Defendant incorrectly conflates distinct issues, and his challenge is unavailing.

To begin, the Court's jurisdiction to preside over Defendant's case is not premised upon the proper appointment of the U.S. Attorney; it is distinct and independently derived from the U.S. Constitution, as supplemented by statute. See, e.g., U.S. Const. art. III; 28 U.S.C. §§ 1331, 1332. Separately, under the Appointments Clause of Article II of the Constitution, a U.S. Attorney is appointed after both nomination by the President and confirmation by the Senate. See U.S. Const. art. II, § 2, cl.2; see also In re Grand Jury Subpoenas to Off. of the N.Y. State Att'y Gen., No. 26-156, -- F.4th --, 2026 WL 2450485, at *1-2 (2d Cir. Aug. 21, 2026) (discussing appointment processes for U.S. Attorneys and Acting U.S. Attorneys); see also id. at *1 (holding John A. Sarcone III ("Sarcone") was not serving as Acting U.S. Attorney for the Northern District of New York and, therefore, lacked authority to issue subpoenas; affirming district court's quashing of subpoenas issued by Sarcone for lack of authority to issue same). One's bald challenge to the authority of a U.S. Attorney or an AUSA to commence an action does not deprive a court

of its jurisdiction to decide that challenge (or any other action taken by the challenged federal prosecutor). See generally id. (affirming district court's quashing subpoenas issued by Sarcone due to his lack of authority to obtain them); see also id. at *5 (stating "[d]ecisions to disqualify an attorney, including a prosecutor, are reviewed for abuse of discretion", thereby implying trial courts have jurisdiction to initially decide such issues). Indeed, if that were the case, one could shield himself from criminal prosecution simply by raising a challenge to the prosecutor's authority to act; such a position—i.e., that a challenge to a U.S. Attorney's authority to indict automatically strips a court of its jurisdiction--defies logic. Moreover, while the presentation of a defective indictment may be grounds to dismiss a criminal case, it is not grounds to challenge the basis of a court's jurisdiction[5] especially where, as here, a defendant woefully fails to identify a total want of jurisdiction. Indeed, given the record of this case, there is no reason to doubt the Court had an arguable basis upon which to rest its jurisdiction;

[5] See, e.g., Cent. Vt. Public Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003) ("In the context of a Rule 60(b)(4) motion, a judgment may be declared void for want of jurisdiction only when the court 'plainly usurped jurisdiction,' or, put somewhat differently, when 'there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction.'" (quoting Nemaizer, 793 F.2d at 65 (internal quotation marks and citations omitted)). That is not the case here.

therefore, without more, this branch of Defendant's challenge to the Judgment against him would be rejected in the context of a habeas petition.

Continuing, as to Defendant's interrelated contentions regarding the validity of the Indictment and the appointments of the U.S. Attorney and AUSAs (which are considered jointly herein), they, too, would be unavailing. Defendant's position is based upon generalized statements, devoid of specific factual allegations giving rise to a colorable claim supporting his theory that the U.S. Attorney and AUSAs in this action acted without required authority. (See Rule 60(b) Motion, in toto.) His Renewed Motion also lacks sufficient supporting factual allegations; other than identifying AUSA Whitman G. Knapp as the government attorney "who appears throughout the post-conviction docket", Defendant fails to explain why he believes there is any reason to doubt the valid appointment or authority of the U.S. Attorney or his subordinate AUSAs, including AUSA Knapp. (Renewed Motion at Part III(B).) But, relying upon Ryder v. United States, 515 U.S. 177, 182-83 (1995), Defendant asserts he "is not required to prove the absence of appointment authority"; instead, he argues, the Government "bears the burden of demonstrating that the officers who prosecuted and now oppose th[e P]etition held valid appointment authority." (Renewed Motion at Part III(C).) The Court disagrees.

To begin, Defendant's reliance upon Ryder is misplaced to the extend he implies that, here, he does not bear the burden of establishing his claim of lack of authority. In Ryder, while appearing before a military review court, the petitioner contemporaneously challenged the validity of the appointment of civilian judges to that review court. See Ryder, 515 U.S. at 179. Ryder's was not some vague challenge to the Appointments Clause, but one based upon known facts giving rise to a colorable claim—i.e., that the challenged judges were civilians and not military officers--and which challenge was raised before that very panel of judges, during their review of his case. See id. By contrast, in this instance, Defendant's challenge is little more than an after-thought, unsupported by any objective basis. Indeed, liberally interpreting his Appointments Clause challenge, Defendant does not make out a claim of a questionable appointment of the U.S. Attorney or an AUSA; instead, it is frivolous and disingenuous. Cf. Ryder, 515 U.S. at 182-83.

In turn, because Defendant's claim regarding the U.S. Attorney's and AUSAs' supposed lack of authority is without substance, it does not warrant putting the Government to its proof that the U.S. Attorney and AUSAs acted with proper authority, as Defendant argues. (See Rule 60(b) Motion at Part III(C)). Indeed, Defendant's stance in this regard is contrary to the well-settled principle of "presumption of regularity". As Judge Chen explained

in another of her cases, where she denied a motion for discovery and an evidentiary hearing on a sufficiently analogous claim of vindictive prosecution:

> It is well settled that within the federal criminal justice system, "the Attorney General and the United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 . . . (1996) (citing Wayte v. United States, 470 U.S. 598, 607 . . . ("In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute.")). Because a "presumption of regularity" attaches to prosecutorial decisions, courts must presume "in the absence of clear evidence to the contrary" that prosecutors "have properly discharged their official duties." Armstrong, 517 U.S. at 464, 116 S. Ct. 1480. Accordingly, the Supreme Court has consistently observed that "the decision to prosecute is particularly ill-suited to judicial review." See Wayte, 470 U.S. at 607, 105 S. Ct. 1524. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 . . . (1978).

United States v. Ji, 662 F. Supp. 3d 424, 430 (E.D.N.Y. 2023) (emphasis added).

In this instance, the presumption-of-regularity inures to the benefit of the Government. See generally United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in

the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (emphasis added)); Bank of U.S. v. Dandridge, 25 U.S. 64, 69-70 (1827) (instructing the law "presumes that every man, in his private and official character, does his duty, until the contrary is proved", "will presume that all things are rightly done, unless the circumstances of the case overturn this presumption", and "will presume that a man acting in a public office has been rightly appointed"). As such, Defendant's assertion that the Government has an affirmative obligation to establish the authority of U.S. Attorney and the AUSAs to bring this case (see Renewed Motion at Part III(C)), is unavailing.

Nonetheless, the presumption of regularity is a rebuttable one. See, e.g., Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004) (instructing the presumption-of-regularity serves as a "general working principle" pursuant to which courts will "insist on a meaningful evidentiary showing" before entertaining doubts about the integrity of official acts or documents); see also generally United States v. Nix, 189 U.S. 199, 205 (1903) (instructing the challenging party bears the burden of proving any irregularity). The issue, then, is whether Defendant has rebutted the presumption. He has not. Once more, the Court turns to Judge Chen's reasoning in Ji, finding it instructive to the issue at hand.

As stated, Ji involved a defendant claiming vindictive prosecution; he sought discovery and an evidentiary hearing to prove his claim. See 662 F. Supp.3d at 430. Judge Chen addressed the standard for establishing a vindictive prosecution claim, as well as the showing necessary to warrant discovery or a hearing on such a claim. See id. at 430-33. Generally, "a defendant claiming he has been subjected to vindictive prosecution must prove objectively that the prosecutor's charging decision was a direct and unjustifiable penalty that resulted solely from the defendant's exercise of a protected legal right." Id. at 431 (cleaned up; internal citations omitted; emphasis added). The standard warranting discovery on such a claim is "rigorous", id. at 432, since "[i]t would be too easy for defendants to obtain discovery or an evidentiary hearing on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus." Id. at 433 (quoting United States v. Sanders, 211 F.3d 711, 718 (2d Cir. 2000) (further citation modified)). Of import and relevance to the instant case, "courts have consistently held that affidavits that 'speak in generalities and offer only beliefs' do not justify discovery or an evidentiary hearing" since such affidavits fall short of presenting "some evidence" justifying discovery or a hearing. Id. (quoting United States v. Alameh, 341 F.3d 167, 174 (2d Cir. 2003)); cf. United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992) (in context of

related selective prosecution claim, "[m]ere assertions and generalized proffers on information and belief are insufficient" to warrant discovery or hearing on said claim).

Judge Chen's vindictive prosecution discussion provides helpful guidance here.[6] As already highlighted, in asserting the U.S. Attorney and AUSAs who prosecuted his case lacked proper authority under the Appointments Clause, Defendant offers nothing

---

[6] Also of some guidance value is the de facto officer doctrine, which

> doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. Norton v. Shelby County, 118 U.S. 425, 440, 6 S. Ct. 1121, 1124, 30 L. Ed. 178 (1886). "The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." 63A Am. Jur.2d, Public Officers and Employees § 578, pp. 1080-1081 (1984) (footnote omitted). The doctrine has been relied upon by this Court in several cases involving challenges by criminal defendants to the authority of a judge who participated in some part of the proceedings leading to their conviction and sentence.

Ryder, 515 U.S. at 180-81 (emphases added). This doctrine infers that one who raises a deficient appointment challenge, must do so objectively, i.e., presenting credible, specific allegations and/or proffering sufficient evidence reasonably supporting that claim. It underscores the need for the challenger to proffer a colorable claim when questioning the validity of an appointment.

more than suppositions and vague claims. (See Motions, in toto.) Indeed, Defendant does not even identify the purportedly offending U.S. Attorney by name. Nor has Defendant supported his Appointments Clause claim with an affidavit or declaration. This is a far cry from the form of objective evidence sufficient to support Defendant's claim. Compare, for example, the recent challenge brought by the New York Office of the Attorney General ("NYOAG") against subpoenas secured by Sarcone, who self-identified as the Acting U.S. Attorney for the Northern District of New York. See In re Grand Jury Subpoenas to [NYOAG], No. 25-MC-0019, Motion to Quash (ECF No. 1) (N.D.N.Y. Aug. 19, 2025). In support of it motion to quash the Sarcone-issued subpoenas, among other arguments, NYOAG specifically challenged Sarcone's authority to issue said subpoenas. See id., Support Memo, ECF No. 1-2, at 31-34. That challenge was bolstered by a declaration and several supporting exhibits. See id. (citing Chen Decl. and various attached exhibits).) Based upon that exacting record, the district court granted the motion to quash, ruling, inter alia, "[t]he subpoenas . . . were issued through an official acting without lawful authority", and "therefore lacked the regularity required for a presumption of reasonableness."[7] In re Grand Jury

[7] The district court's ruling was premised primarily upon statutory interpretation; granting the motion to quash due to Sarcone's lack of authority was an additional basis for the court's ruling.

Subpoenas to [NYOAG], 814 F. Supp. 3d at 299. Here, by contrast, in the absence of any reasonable, colorable claim that the U.S. Attorney or the AUSAs who prosecuted Defendant's case lacked proper authority to do so, Defendant is unable to rebut the presumption of regularity; in turn, his foundational claim challenging the authority of the U.S. Attorney and AUSAs and, in turn, the validity of his Indictment must be rejected. As such, to the extent Defendant would put forth this claim in support of habeas relief, it would woefully fail.

2. Regarding Alleged Actual Conflict Argument

As will be more robustly addressed in the Court's Memorandum and Order ruling upon Defendant's habeas Petition, Defendant's actual conflict argument—which he has raised in his habeas Petition—is without merit. To establish an actual conflict of counsel, Defendant must show the attorney at issue is not admitted to the bar of any court or is implicated in the defendant's crimes. See United States v. Loera, 24 F.4th 144, 160 (2d Cir. 2022); see also United States v. John Doe #1, 272 F.3d 116, 125 (2d Cir. 2001). However, the expanded record clearly establishes that no such actual conflict of counsel existed. (Compare Chartier Habeas Decl., ECF No. 1446 at ECF pp.17-18; with LaRusso Habeas Aff., ECF No. 1476, ¶4 (averring to be an attorney in good standing for more than 40 years and not having been implicated in any crime, let alone Chartier's).) Indeed, as the

Government correctly stated: "[A]lthough Chartier alleges the existence of a per se conflict, he makes no allegation (there is no evidence to support it) that such a conflict exists." (Habeas Opp'n, ECF No. 1477, at 8.) Therefore, this argument would be found meritless.

To the extent Defendant further argues the "conflict was not cured by waiver" (Rule 60(b) Motion at Part IV(B)), that argument would also be rejected because Defendant fails to explain—even in a cursory manner—why or how the "Curcio process was constitutionally incomplete", "rest[ed] on incomplete disclosure" or "fail[ed] to account for conflicts that evolved during trial." (Id.) In any event, as will be more fully discussed in its Memorandum and Order regarding Defendant's Habeas Petition (see Memo & Order, DISCUSSION, Part II(B)(2)(a)(i); see also id. at BACKGROUND, Part II(B) (discussing Defendant's Curcio hearing)), the Court would find Defendant's challenge to the Curcio hearing unavailing as a basis for granting habeas relief.

-*-*-*-

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit. At bottom, the Court denies Chartier's Motions challenging the Court's jurisdiction under Rule 60(b)(4) as beyond the scope of Rule 60(b). See Stinn, 2024 WL 4989241, at *9 (citing Harris, 367 F.3d at 82). And, to the extent the Motions could be

construed as amending Chartier's Habeas Petition, the additional arguments the Motions raise would fail to present any basis warranting habeas relief.

## CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Rule 60(b) Motion (ECF No. 1452) and Renewed Motion (ECF No. 1472) are **DENIED** in their entireties;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Defendant is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 31, 2026
Central Islip, New York