UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JEFFREY CHARTIER,
Petitioner,

MEMORANDUM and ORDER
17-CR-0372(JS)

-against-

UNITED STATES OF AMERICA,
Respondent.
----------------------------------X

APPEARANCES

For Petitioner: Jeffrey Chartier, Pro se
#75150-112
FCI Coleman Low
FEDERAL CORRECTIONAL INSTITUTION
Satellite Camp
P.O. Box 1027
Coleman, Florida 33521

For Respondent : Whitman G.S. Knapp, Esq.
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

SEYBERT, District Judge:

Presently before the Court is the pro se Section 2255 habeas petition of Jeffrey Chartier ("Petitioner" or "Chartier"), seeking to vacate his conviction and to have a new trial, as well as requesting his interim release on bond pending a final determination on the Petition (hereafter, the "Petition"). (See Petition, ECF No. 1475; see also Support Memo, ECF No. 1446 at ECF pp.19-29; Chartier Decl., ECF No. 1446 at ECF pp.17-18.) The

Government opposes the Petition. (See Opp'n, ECF No. 1477.) For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I. General Overview

The Court presumes the parties' familiarity with the facts of this case. See generally United States v. Chartier, No. 17-CR-0373, 2021 WL 3795352 (E.D.N.Y. Aug. 26, 2021) (denying co-defendants' motions for acquittal or, alternatively, new trials[1]) (hereafter, the "Post-Trial Decision"), aff'd, Nos. 22-3125 (L), 23-6080 (CON), 2024 WL 3617023 (2d Cir. Aug. 1, 2024) (summary order). For the reader's convenience, the Court states generally that Chartier was convicted of, inter alia, securities fraud and conspiracy to commit securities fraud. See id. at *1. To perpetrate the frauds, Chartier employed "a pump-and-dump boiler room [(hereafter, the "Boiler Room")] that pushed penny stocks on mostly elderly investors" in microcap companies in which Chartier had ownership interests (hereafter, the "Companies"). Id.

> The Boiler Room cold-called potential victims and used high-pressure sales tactics and fraudulent misrepresentations and omissions

[1] More accurately, the Court granted, in part, Chartier's motion for judgment of acquittal or, in the alternative, for a new trial to the extent it vacated his conviction as to Count Sixteen of the subject superseding indictment. See Post-Trial Decision, 2021 WL 3795352, at *1, *26-29. In all other respects, Chartier's motion was denied. See id. at *18, *52.

> to induce them to purchase stock in the companies the Boiler Room was promoting. Once the Boiler Room's employees had convinced an investor to place an order for a certain number of shares at a certain price, the Boiler Room would contact Chartier [or others] . . . so that they could sell their shares to fill the incoming buy order. The purposes of the scheme included artificially inflating the [C]ompanies' stock prices and allowing Chartier [and others] . . . to sell their shares at a profit.

Id.

II. Pre-Trial

A. Generally

Among other co-defendants, the Government brought a 16-count Superseding Indictment against Petitioner charging him with artificially controlling the price and volume of traded shares in the Companies. See Post-Trial Decision, 2021 WL 3795352, at *1-2. Numerous co-defendants pled guilty prior to trial. See id. at *2. Chartier did not; neither did co-defendants Isen, Lee, or Watts. See id. Co-defendant Watts was tried and convicted separately. See id. Chartier was to be tried together with co-defendants Isen and Lee. See id. (citing United States v. Isen, No. 17-CR-0372, 2019 WL 6875369 (E.D.N.Y. Dec. 17, 2019)). It appears counsel for Petitioner and co-defendant Lee were working in tandem in preparing their defenses. (See, e.g., Dec. 17, 2019 Curcio Hr'g Tr., Ex. A, ECF No. 1477-1, at 16-17, attached to Opp'n (Attorney LaRusso seeking the Court's permission to make a joint

application with co-defendant Lee's counsel to retain an expert to assist counsel in evaluating and reviewing financial records in preparation for trial); Joint Motion to Adjourn Trial by Co-Defendants Chartier, Isen, and Lee, ECF No. 627 (signed by each co-defendant's respective counsel).) Indeed, Petitioner asserts there was a joint defense agreement between himself and co-defendant Lee. (See Petition at 6; see also Support Memo at 6-7; LaRusso Aff. ¶¶ 12-14 (referencing a "joint defense agreement"); Brissenden Aff. ¶¶ 10-13 (same).) However, approximately two weeks before the commencement of trial, co-defendant Lee "pled guilty pursuant to a cooperation agreement with the Government." Post-Trial Decision, 2021 WL 3795352, at *2.

B. The *Curcio* Hearing

Prior to the trial beginning, when it was scheduled to start in January 2020 and before co-defendant Lee entered a change-of-plea, in early December 2019, the Government informed the Court of a potential conflict of interest involving Chartier's defense counsel, Attorney LaRusso. (See Letter Motion Seeking Curcio Hr'g, ECF No. 608 (hereafter, the "Curcio Letter").) The potential conflict arose when co-defendant Ronald Hardy, a Boiler Room operator involved in the same charged scheme as Chartier, but who had pled guilty and been sentenced, retained one of Attorney LaRusso's law partners, Attorney Joseph Conway, seeking legal

advice regarding whether to appeal his sentence. (See id. at 1-2.) The Government asserted: "There are clearly potential conflicts that arise when two partners in the same firm represent two defendants in the same case, particularly where one defendant's (Chartier's) trial defense involves implicating the other defendant (Hardy)." (Id. at 2.) To determine whether the potential conflict could be waived, the Government sought a Curcio hearing, with Chartier being appointed separate Curcio conflict counsel for said hearing. (See id. at 2; see also id. at 3.) This Court obliged.

First, on December 11, 2019, the Court appointed Attorney Joseph J. Ferrante as Chartier's conflict counsel. (See CJA App't Form, ECF No. 611.) Then, on December 17, 2019, it conducted a Curcio hearing.[2] (See Dec. 17, 2019 Min. Entry, ECF No. 618; see also Dec. 17, 2019 Curcio Hr'g Tr., Ex. A, ECF No. 1477-1, attached to Opp'n.) Both Attorneys LaRusso and Ferrante were in attendance; upon his request, Chartier participated remotely. (See Curcio Hr'g Tr. at 2, 3; Dec. 13, 2019 Letter Application, ECF No. 615 (requesting Chartier participate telephonically).)

---

[2] On December 19, 2019, the Court conducted a separate Curcio hearing with co-defendant Hardy. (See Case Docket, Dec. 19, 2019 Min. Entry, ECF No. 625.) Attorney John F. Carman was appointed Hardy's conflict counsel for said hearing. (See CJA App't Form, ECF No. 620; see also Dec. 19, 2019 Min. Entry.) Under oath, Hardy waived any conflict of interest. (See Dec. 19, 2019 Min. Entry.)

Petitioner confirmed he understood the potential conflicts caused by co-defendant Hardy having consulted with Attorney Conway. (Id. at 3-4.) Nonetheless, at the hearing, the Government reiterated the bases for the potential conflicts, which Petitioner acknowledged and confirmed he had discussed with conflict counsel, Attorney Ferrante. (See id. at 4-6.) Attorney Ferrante further confirmed: he had reviewed the potential areas of conflict with Petitioner; his belief Petitioner understood the potential areas of conflict; he had not identified any actual conflicts given the specific fact-scenario presented. (See id. at 6-7.) Moreover, having placed Petitioner under oath, the Court ensured Chartier was clear-headed and understood the proceeding. (See id. at 8-10, 11.) Chartier also averred he understood the potential conflicts of interest he was waiving by continuing to have Attorney LaRusso represent him and his waiver was voluntary. (See id. at 10, 12-14.) Of relevance, Chartier testified he was not forced or threatened to waive the potential conflict. (See id. at 13.) The Court found the identified conflicts were potential and Chartier waived those potential conflicts of interest knowingly and voluntarily. (See id. at 13-14.)

III. The Trial

Thereafter, after a short adjournment was granted, jury selection commenced February 3, 2020, with the trial against Petitioner and co-defendant Isen beginning on February 10, 2020.

(See, e.g., Feb. 3, 2020 Min. Entry, ECF No. 699 (re: jury voir dire as to Chartier and Isen); Feb. 10, 2020 Min. Entry, ECF No. 729 (re: jury trial of Chartier and Isen).) It spanned six weeks. See Chartier, 2024 WL 3617023, at *4.

At his trial, co-defendant Lee testified against Petitioner. See generally Post-Trial Decision, 2021 WL 3795352, at *3-12, 23; (see also Opp'n at 2). Petitioner also called Lee as a defense witness. See, e.g., id. at *25. Lee's trial testimony was based upon her recollection of events during the commission of the subject fraud schemes; "she never testified to any post-arrest privileged conversation with Chartier or his counsel." (Opp'n at 2 (citing LaRusso Aff., Ex. B, ECF No. 1477-2, ¶12, attached to Opp'n;[3] Brissenden Aff., Ex. C, ECF No. 1477-3, ¶11, attached to Opp'n).)

On March 18, 2020, the jury convicted Chartier on all counts of the Superseding Indictment. (See Mar. 18, 2020 Min. Entry, ECF No. 797.)

[3] The Government includes Attorney LaRusso's Affidavit with its Opposition, labelled as Exhibit B, but without the internally cited exhibits attached. Attorney LaRusso has separately filed his Affidavit, together with the internally cited exhibits. (See ECF No. 1476; see also ECF No. 1474 (same document, improperly labelled as an Opp'n to Petitioner's Rule 60(b)(4) Motion).)

IV. Post-Trial Motions

Chartier moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure for acquittal and, alternatively, pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial. (See Chartier's Post-Trial Motion, ECF No. 887; see also Joint Post-Trial Motion (with Isen), ECF No. 886.) The Government opposed the motions. (See Post-Trial Motions Opp'n, ECF No. 913.) Rejecting Petitioner's arguments, except as to Count 16 and upon which the Court reversed Chartier's conviction, the Court denied his Post-Trial Motions. See Post-Trial Decision, 2021 WL 3795352.

V. Sentencing

On December 1, 2022, Petitioner was sentenced to a total of 120 months' imprisonment to be followed by two years' supervised release. (See Dec. 1, 2020 Min. Entry, ECF No. 1248.) Said sentence was below the Probation Department's recommended Guidelines sentence of 180 months' imprisonment. (See Probation Dep't Sent'g Recommend., ECF No. 1029-1 (sealed), at (unnumbered) 4.) Judgment entered December 7, 2020. (See ECF No. 1252.)

VI. The Appeal

Petitioner filed a timely appeal on December 12, 2022. (See Notice of Appeal, ECF No. 1254; see also Am. Notice of Appeal, ECF No. 1255.) While the Notice of Appeal was filed by Attorney LaRusso, thereafter, Attorney Matthew W. Brissenden represented

Petitioner on his appeal. (See, e.g., Mar. 9, 2023 Cover Ltr., ECF No. 1287.)

At the appellate level, on Chartier's behalf, Attorney Brissenden challenged the district court's jury instructions regarding both material misrepresentations or omissions under Rule 10b-5 and "matched trades", as well as the substantive reasonableness of his sentence as compared to co-defendant Isen. See Chartier, 2024 WL 3617023, at *5. Chartier also joined in co-defendant Isen's challenge to the sufficiency of the Government's evidence of a single, overarching conspiracy. See id. He did not assert Attorney LaRusso provided ineffective assistance.

On August 1, 2024, rejecting Petitioner's challenges, the Second Circuit affirmed his conviction and this Court's below-Guidelines sentence of 120 months' imprisonment. Id. at *10. Petitioner did not further appeal to the Supreme Court. (See Petition, ECF No. 1475, at 2.[4]) This Petition followed; it is deemed fully briefed and is ripe for decision.[5]

---

[4] Herein, unless otherwise indicated, the Court cites to the internal pages of the Petition.

[5] Although afforded the opportunity to do so, to date, Petition has not filed a Reply. (Compare Case Docket, in toto, with July 1, 2026 Endorsed Order, ECF No. 1482 (granting Petitioner's extension request and "sua sponte, grant[ing] Defendant Chartier a further extension such that his Reply to the Government's Response shall be due by no later than August 7, 2026").)

DISCUSSION

I. Applicable Law

A. The Section 2255 Standard Generally

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011). To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in

order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." (internal quotation marks omitted)). Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence. See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further citation omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

B. Ineffective-Assistance-of-Counsel Claims

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id.

Herring v. United States, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025); see also Cabral v. United States, No. 12-CR-0336, 2022 WL 307809, at *6 (E.D.N.Y. Feb. 2, 2022) (stating, "to prevail on his ineffective assistance of counsel claim, [petitioner] must '(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,'' and (2) ''affirmatively prove prejudice' arising from counsel's allegedly deficient representation'" (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005); further citation omitted)). As to the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). In that vein, a petitioner is required to show "[t]he likelihood of a

different result [was] substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (internal quotation marks omitted). And, "[i]n assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

"Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test." Velez v. United States, No. 05-CV-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")); see also United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at *12 (E.D.N.Y. Aug. 1, 2024) ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong." (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)).

C. Consideration of Petitioner's *Pro Se* Status

"When a defendant attacking his . . . sentence is proceeding pro se, the court must 'read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims.'" United States v. Williams, No.

20-CR-0404, 2025 WL 660213, at *4 (E.D.N.Y. Feb. 28, 2025) (quoting United States v. Parisi, 529 F.3d 134, 139 (2d Cir. 2008); further citation omitted). Hence, since Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "Nonetheless, a pro se [motion] must state a plausible claim for relief." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013); see also Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 632–33 (2d Cir. 2016) ("Although [courts] accord filings from pro se litigants a high degree of solicitude, even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief." (quoting Donofrio v. City of N.Y., 563 F. App'x 92, 93 (2d Cir. 2014) (summary order)). Additionally, a pro se litigant is not excused "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)). And, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the [habeas] motion." Seabrook v. United States, No. 22-841, 2023 WL 7489961,

at *2 (2d Cir. Nov. 13, 2023) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

II. Application

A. The Petition

1. Petitioner's Position

In seeking to have his sentence vacated, Petitioner raises four claims of ineffective assistance of counsel, to wit: (a) claiming Attorney LaRusso operated under a conflict of interest (see Petition at 4; Support Memo at 3-4) (hereafter, "Ground One" or the "Conflict Claim"); (b) asserting Attorney LaRusso failed to object to (i) co-defendant Lee's purported violation of a joint defense agreement (see Petition at 5; Support Memo at 6-7) (hereafter, the "Lee-Based Challenge"), and (ii) admission of business records which had been authenticated by written certifications (see Support Memo at 9-10[6]) (hereafter, "Authentication Challenge"; together with the Lee-Based Challenge, "Ground Two" or the "Trial-Based Ineffective Claims"); (c) contending Attorney LaRusso permitted a violation of the joint defense agreement with co-defendant Lee, thereby improperly violating the attorney-client privilege to which Petitioner was

[6] To the extent Petitioner identifies this is a separate Ground, i.e., "Ground 5" (see Petition at 9), in its discretion and for convenience, the Court addresses it in the context of Ground Two, which it characterizes as Petitioner's "Trial-Based Ineffective Claims".

entitled (see Petition at 6; Support Memo at 6-7) (hereafter, "Ground Three" or the "Privilege-Based Claim"); and (d) maintaining appellate counsel, Attorney Brissenden, improperly failed to raise issues upon appeal, i.e., (i) Attorney LaRusso's conflict, and (ii) the wrongful disclosure of privileged information by co-defendant Lee in violation of the joint defense agreement (see Petition at 8; Support Memo at 8) (hereafter, "Ground Four" or the "Appellate-Based Claims").

In addition to his Support Memo, Petitioner has also submitted a declaration for the Court's consideration. (See Chartier Decl., ECF No. 1475 at ECF pp.12-13.) Of relevance, Petitioner generally avers about what occurred at his December 2019 Curcio hearing. (See id.) Petitioner declares he was advised by separate, conflict counsel, Joseph Ferrante, regarding his rights, the conflict, and the need for the Curcio hearing. (See id. at ¶2.) He also states: "At the [Curcio] hearing, not wanting to disappoint Mr. LaRusso, I made representations to the court that negatively affected my defense. I was following the recommendation and lead of my counsel, Mr. LaRusso, in accepting the waiver of the conflict." (Id. (stating, further, "I believe Mr. LaRusso put [his] firm's interest above mine.").) He makes no other declarations addressing his other claims of ineffective assistance of counsel. Nor has Petitioner proffered any other competent evidence in support of his Petition.

2. The Government's Position

The Government maintains "[t]here is no merit to Chartier's contentions that either his lead trial counsel, LaRusso, or his appellate counsel, Brissenden, rendered any ineffective assistance at all, much less errors so serious as to not function as counsel guaranteed by the Sixth Amendment." (Opp'n at 8.) Particular to LaRusso, the Government asserts: (a) as to the alleged conflict of interest (re: Hardy), (i) under the law, there is no actual conflict, and (ii) as to any potential conflict, pursuant to a properly administered Curcio hearing, Chartier knowingly, intelligently, and voluntarily waived such conflict (see id. at 8-9); (b) as to the Privilege-Based Claim and related Lee-Based Challenge, there is no evidentiary basis for Petitioner's speculative argument that co-defendant Lee's testimony breached the joint defense agreement or improperly breached a privilege to which Petitioner was entitled (see id. at 9); and (c) as to the Authentication Challenge, under the law, there is no foundation upon which to base such a challenge and, in any event, challenging the authenticity of the Government's business records "would have run contrary to a key strategic goal of the defense." (Id. (citing LaRusso Aff. ¶¶ 16, 18).) Particular to Brissenden, the Government argues the issues Petitioner contends should have been raised on appeal, i.e., "LaRusso was subject to an unwaivable conflict of interest" and

"there was a wrongful disclosure of joint defense agreement-privileged information by witness Stephanie Lee", were contrary to established law and were based upon alleged facts outside the record and not supported by the existing record. (Id. at 10 (citing Brissenden Aff.).)

In support of its Opposition, the Government submits two affidavits: one from Petitioner's trial counsel, Attorney LaRusso (see LaRusso Aff., Ex. B); and one from Petitioner's appellate counsel, Attorney Brissenden (see Brissenden Aff., Ex. C). Under penalty of perjury, Attorney LaRusso averred, inter alia:

a. as to the alleged conflict of interest (re: Hardy):

i. at the time he represented Petitioner as trial counsel, he was partners with Attorney Joseph Conway (see LaRusso Aff. ¶ 1);

ii. in his more than 40 years as an attorney, he has been a "member in good standing to practice law in the State of New York and the Federal Courts in the Eastern District of New York" and has never been implicated in any crime (id. at ¶4);

iii. he discussed the Government's Curcio Letter with Petitioner to the extent he "explained the contents of the [Curcio Letter] to Mr. Chartier, the necessity of an independent attorney being assigned to explain [Petitioner's] rights to a conflict-free attorney[,] and the risks and dangers

inherent in proceeding with the present attorney after waiving the conflict" (id. at ¶5);

iv. he never has, nor ever would have, recommended or sought to influence a client's decision to waive the right to a conflict-free attorney (id. at ¶5);

v. at trial, the principal defense he pursued was to discredit the testimony of co-defendants Lee and Erik Matz, two critical witnesses who "provided direct evidence of the Petitioner's guilty knowledge in the 'pump and dump' scheme charged in the indictment" (id. at ¶7);

vi. his Firm's representation of co-defendant Hardy "entailed writing letters to postpone [Hardy's] surrender date for medical reasons" (id. at ¶8; see also id. at ¶10 (stating Attorney Conway initially discussed a potential appeal of Hardy's sentence, but advised Hardy against it));

vii. he never represented co-defendant Hardy in any capacity and his representation of Petitioner, which, during trial, encompassed "work[ing] seven days a week[,] 12-14 hours a day[,] during the trial", was never compromised by the Firm's representation of Hardy, which comprised principally of seeking continuances of Hardy's self-surrender date (see id. at ¶¶8, 9, 10, 11, and note 1);

b. as to co-defendant Lee:

i. Lee's testimony related to events which occurred "during the commission of the fraudulent activities"; "she never testified to confidential communications protected by a joint defense agreement" (id. at ¶12);

ii. FBI interview reports involving co-defendant Lee (hereafter, the "Interview Reports"), and provided to him (Attorney LaRusso) before Lee's testimony, confirmed Lee's testimony would be based upon Lee's "factual recollection of her and her co-conspirators' participation in the fraudulent activities charged in the indictment" and did not involve "any privileged communications disclosed during the period of the joint defense agreement" (id. at ¶13 (citing Interview Reports, Ex. 7, attached to LaRusso Aff.);

iii. given the Interview Reports, he had no basis to believe co-defendant "Lee would deviate from the factual narrative outlined in the [Interview] Reports" and, therefore, he had no persuasive basis to seek a proffer of, or to object to, Lee's testimony; instead, "[i]t was strategically more beneficial to await [Lee's] testimony during trial" and, if Lee disclosed privileged communications during trial and before the jury, to object and request a mistrial for such improper disclosure (id.); and

c. as to the authentication of records:

i. prior to trial, the Government provided the defense numerous business records accompanied by certifications of authenticity tracking the statutory language necessary for self-authentication, and for which, after examination, he found no basis to challenge same (see id. at ¶15; see also id. at ¶17 (citing various certifications, Exs. 8-10, attached to La Russo Aff.));

ii. further, he "strategically decided to stipulate to the business records to avoid losing credibility with the jury and the Court" since the defense's "primary goal was to establish credibility with the jury"; in that vein, Attorney LaRusso was striving to convince the jury that the Government's chief witnesses, co-defendants Lee and Matz, "were lying regarding the Petitioner's knowing participation in the fraudulent 'pump and dump' scheme" (id. at ¶16); and,

iii. his deliberate trial strategy of stipulating to the introduction of the self-authenticating business records, which strategy was used to "avoid useless and groundless objections" and to maintain and enhance [the defense's] credibility when arguing against the Government's view of the evidence" was based upon his many years of trying federal cases, which has taught Attorney LaRusso "to avoid frivolous and unfounded

positions at trial [and] to avoid losing credibility with the jury and the court." (Id. at ¶18.)

Continuing, as to appellate counsel, under penalty of perjury, Attorney Brissenden averred, inter alia:

a. as to the alleged conflict of interest (re: Hardy):

i. notwithstanding Petitioner's representations at his Curcio hearing, i.e., Petitioner had discussed the potential conflicts of interest in Attorney Conway's representation of co-defendant Hardy after Hardy's sentencing with conflict counsel; Petitioner was clear-headed and understood the proceeding; and, Petitioner had not been coerced or threatened in electing to waive any potential conflict and in continuing to retain Attorney LaRusso as defense counsel, he (Attorney Brissenden) had no legal basis to assert an argument of per se conflict, such that Attorney's LaRusso's representation was ineffective (see id. at ¶¶5-6), especially because there were no allegations Attorney LaRusso was unauthorized to practice law or was engaged in criminal conduct (see id. at ¶6);

ii. similarly, he had no factual basis to raise a conflict-of-interest argument on appeal because there was no evidence supporting that claim (see id. at ¶7 and note 1); and

iii. in any event, to raise an ineffective assistance claim on direct appeal versus via a Section 2255 habeas

petition could have prejudiced Petitioner since, "[i]f such a claim is denied on direct appeal based upon an incomplete record, petitioner may be barred from relitigating such issues via a § 2255 petition" (id. at ¶8 (citing Yick Man Mui, 614 F.3d at 51); and

b. as to co-defendant Lee:

i. it would have been frivolous to argue co-defendant Lee breached a joint defense agreement by sharing information with the Government since there was no record evidence supporting that argument (see id. at ¶10); and

ii. similarly, because there was no evidence that co-defendant Lee breached a joint defense agreement, he "could not credibly or effectively argue on appeal that . . . trial counsel was ineffective in failing to raise this issue" (id. at ¶13; see also id. at ¶¶11-12 (reiterating the lack of record evidence of Lee improperly communicating privileged information)).

At bottom, the Government takes the position that Chartier's Petition "contains no facts that would entitle him to the relief he seeks." (Id.) For the reasons elucidated herein, the Court agrees.

B. The Court's Ruling

1. No Evidentiary Hearing Will Be Held

As an initial matter, to the extent Petitioner's Petitioner can be read to be seeking discovery pursuant to Rule

6(a) of the Rules Governing Section 2255 Proceedings, his request is unavailing.

> Generally, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," Bracy v. Gramley, 520 U.S. 899, 904 (1997), and must meet a heavy burden to establish [his] right to discovery, see Pizzuti v. United States, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011).
>
> Rule 6 of the Rules Governing Section 2255 Proceedings provides that a petitioner is entitled to discovery only if the judge, "for good cause," grants leave to do so. See 28 U.S.C. § 2255, Rule 6(a). Good cause is shown only if the petitioner presents "specific allegations . . . show[ing] reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (cleaned up). However, "generalized statements regarding the possibility of the existence of discoverable material" are insufficient. Pizzuti, 809 F. Supp. 2d at 176.

Lee v. United States, Nos. 07-CR-0003, 17-CV-8567, 2022 WL 814736, at *4 (S.D.N.Y. Mar. 17, 2022) (emphasis added). Thus, as Judge Sweet of the Southern District of New York instructs: "Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" Ruine v. Walsh, No. 00-CV-3798, 2005 WL 1668855, at *6 (S.D.N.Y July 14, 2005) (quoting Charles v. Artuz, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998)).

Here, in the absence of any specific allegations, Petitioner has failed to show good cause warranting discovery. Based upon his submissions, there is no reason to believe Petitioner may, if the facts are fully developed, be able to demonstrate entitlement to habeas relief. Instead, given his vague assertions and suppositions, it is apparent Petitioner is improperly attempting to utilize the habeas process as a proverbial "fishing expedition". That will not do.

Nor is Petitioner entitled to an evidentiary hearing.

> "[T]he filing of a motion pursuant to Section 2255 does not automatically entitle the movant to a hearing; that statutory provision does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez, 722 F.3d at 130 (quoting Machibroda v. United States, 368 U.S. 487, 495 . . . (1962)). A hearing is necessary only where the petition "set[s] forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." Id. at 131.

Sainfil v. United States, 833 F. Supp. 3d 229, 265 (E.D.N.Y. May 27, 2026).

In this instance and in its discretion, the Court has determined a full-blown evidentiary hearing on the Petition is not necessary; upon the expanded record presented--where Petitioner and both Attorneys LaRusso and Brissenden have filed affidavits--the Court need not hold an evidentiary hearing. See, e.g.,

Kapelioujnyi v. United States, 779 F. Supp.2d 250, 253 (E.D.N.Y. 2009) (ruling evidentiary hearing not necessary "where both parties have filed affidavits and thus the testimony of petitioner and his trial counsel would add little or nothing to the written submissions" (citation modified), aff'd, 422 F. App'x 25 (2d Cir. 2011); see also Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006) (instructing a district court "has discretion to determine if a testimonial hearing will be conducted"); Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (same). Nor has Petitioner presented any substantial unresolved factual disputes; instead, he surmises and poses theoretical questions based upon pure speculation. (See, e.g., Support Memo at 1-3 (posing nine questions and stating they are "suggested to guide the Court for the necessity of an evidentiary hearing").) Indeed, absent specific facts supported by competent evidence or setting forth detailed issues of fact, Petitioner has not raised any colorable claims of disputed facts warranting a hearing or, if so, which cannot be resolved by affidavit alone. Cf., e.g., Perevoznikov v. United States, No. 20-CR-0415, 2025 WL 916883, at *4 (E.D.N.Y. Mar. 25, 2025) ("To warrant a hearing, 'the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief.'" (quoting Gonzalez, 722 F.3d at 131)). Rather, "the parties' written submissions and the record

in this case are more than sufficient and uncontroverted to resolve the conclusory factual issues raised by Petitioner without a hearing and fully supports a denial of the Petition." Sinclair v. United States, No. 2026 WL 607856, at *11 (S.D.N.Y., 2026) (collecting cases denying hearings on Section 2255 petitions); see also Puglisi, 586 F.3d at 214 (instructing, where the judge who tried the underlying criminal case also presides over the Section 2255 motion, "a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner"); Seabrook, 2023 WL 7489961, at *2 (affirming dismissal of habeas petition without hearing where petition was without merit). Accordingly, given its review of the Petition and the record, this Court proceeds to rule upon the Petition without an evidentiary hearing.

2. The Ineffective-Assistance Claims are Meritless

Petitioner's ineffective-assistance claims fall into two categories: those directed at his trial defense counsel, Attorney LaRusso (Grounds One, Two, and Three), and those directed at his appellate counsel, Attorney Brissenden (Ground Four). For the reasons discussed, below, for both categories, Petitioner fails to establish his respective counsel's performance was constitutionally deficient; therefore, habeas relief is not warranted.

a. Claims Against Attorney LaRusso

As a threshold matter, because Petitioner is unable to satisfy the prejudice prong of the Strickland test as to his Ineffective Assistance Claims against Attorney LaRusso, said Claims are unavailing to support habeas relief.

> [O]ther than his bald assertions, Petitioner has failed to proffer any objective evidence demonstrating prejudice. See Norville [v. United States], 151 F. Supp. 3d [329,] 336 [(S.D.N.Y. 2015)] (addressing prejudice prong of the Strickland test; instructing a petitioner must affirmatively prove prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and "some objective evidence other than [petitioner's] assertions is required to establish prejudice" (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir.2003)) (citation modified).

Hardy v. United States, No. 17-CR-0372, 2026 WL 252003, at *9 (E.D.N.Y. Jan. 30, 2026) (emphasis added); (cf. Support Memo at 1 (baldly stating to be "heavily prejudiced in post-trial" due to LaRusso's alleged conflict of interest), at 4 (baldly asserting an actual conflict existed and, therefore, prejudice need not be shown), at 6 (baldly claiming that, in failing to object to co-defendant Lee's testimony, "the prejudice was obvious"), and, at 10 (baldly stating to be prejudiced by counsel's failure to independently verify the reliability or completeness of the certifications accompanying business records)). Chartier's "'purely speculative' arguments about the impact of an error do

not establish prejudice." DeCarlo v. United States, No. 08-CR-0523, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991)). And, "[i]n the absence of establishing prejudice, Petitioner's claim[s] of ineffective-assistance-of-counsel [] fail." Hardy, 2026 WL 252003, at *9; see also Derounian, 2024 WL 3623522, at *12 (stating where petitioner cannot satisfy either of the two Strickland prongs, "[a] court must reject a petitioner's ineffective assistance of counsel claim" (citation omitted)).

"The [C]ourt need not address both elements of the Strickland inquiry if the defendant fails to establish one." Garner v. Lee, 908 F.3d 845, 861 (2d Cir. 2018). Here, since Petitioner is unable to satisfy the Strickland prejudice prong, the Court need not examine the performance prong. Nonetheless, the Court briefly addresses the Strickland performance prong as to each of the Ineffective Claims Petitioner advances against Attorney LaRusso. In sum, though, because Petitioner is unable to demonstrate that Attorney LaRusso's performance fell outside the broad range of objectively reasonable professional standards, the Petition would be denied under this prong of the Strickland test, as well.

i. The Conflict Claim (re: Hardy)

Petitioner's claim of ineffective assistance based upon Attorney LaRusso's alleged conflict-of-interest is unavailing.

First, pursuant to Second Circuit precedent, Petitioner cannot establish an actual, per se conflict such that Attorney LaRusso's representation was ineffective. To do so, one must show the attorney at issue is not admitted to the bar of any court or is implicated in the defendant's crimes. See United States v. Loera, 24 F.4th 144, 160 (2d Cir. 2022); see also United States v. John Doe #1, 272 F.3d 116, 125 (2d Cir. 2001). Petitioner does not claim either situation exists. And, Attorney LaRusso avers the opposite; he is an attorney in good standing, which he has been for more than 40 years, and has not been implicated in any crime, let alone Petitioner's. (See LaRusso Aff. ¶4.) This Court has no basis, nor has Petitioner presented any, to question the veracity of those statements. Rather, as the Government correctly states: "[A]lthough Chartier alleges the existence of a per se conflict, he makes no allegation (there is no evidence to support it) that such a conflict exists." (Opp'n at 8.) Therefore, in the absence of any evidence of a per se conflict of interest, this branch of Petitioner's Conflict Claim fails.

Second, notwithstanding his vague declarations (see Chartier Decl.) and hindsight-based speculations and conjectures (see Support Memo at 1-3), Petitioner has also failed to demonstrate the potential conflict-of-interest under which Attorney LaRusso purportedly operated was not properly waived. Petitioner generally states that, at his Curcio hearing, "not

wanting to disappoint Mr. LaRusso, [he] made representations to the court that negatively affected [his] defense." (Chartier Decl.) He does not elucidate either the supposed representations which negatively affected his defense or the manner in which those amorphous representations affected his defense. Moreover, even if Petitioner is alleging he was pressured in any way by Attorney LaRusso to waive any potential conflict in Attorney LaRusso's continued representation of him, his statements during the Curcio hearing (see Curcio Hr'g Tr. 13) confirmed no one forced or threatened him to waive any potential conflict. Petitioner cannot "overcome the obstacle posed by his own sworn [Curcio] hearing testimony simply by making a broad, general statement contradicting it." United States v. Amirouche, 784 F. Supp. 3d 110, 126 (E.D.N.Y. Sept. 13, 2024). Rather, "'[s]olemn declarations in open court' made at a [Curcio] hearing 'carry a strong presumption of verity,' and contrary allegations that are 'unsupported by specifics' or 'wholly incredible' in light of the record are 'subject to summary dismissal'." Id. (quoting Blackledge, 431 U.S. at 71) (stating further, in context of analogous guilty plea hearings, "[c]ourts routinely summarily reject Strickland claims in Section 2255 motions where the defendant . . . offers only broad, general allegations to contradict testimony from his or her guilty plea hearing that he . . . was not induced to plead guilty by promises from an attorney

as to sentencing (collecting cases)). Indeed, "a trial court may fairly rely upon a [petitioner's] sworn statement made in open court." Salerno v. Berbary, 389 F. Syupp.2d 480, 484-85 (W.D.N.Y. 2005) (rejecting a petitioner's challenge to validity of guilty plea where his allegations in habeas proceeding were contradicted by his sworn statements at plea allocution). The Court does so here; Chartier's present bald assertion that he waived any potential conflict so as not to disappoint Attorney LaRusso does not overcome the strong presumption of verity which attaches to his sworn Curcio hearing testimony. Accordingly, the Court rejects this branch of Petitioner's Conflict Claim.

Continuing, the Court observes Petitioner's other contentions are similarly vague and are not described with specific facts or supported by competent evidence. For example, Petitioner asserts his belief that Attorney LaRusso put his law firm's interests ahead of Petitioner's interests, baldly claiming Conway's representation of Hardy "created a financial conflict within his firm to [Petitioner's] detriment." (Id.) Yet, he fails to explain the financial conflict that was created. Petitioner also states this supposed conflict prejudiced him "by limiting [him] to specific arguments", but he does not explain the limitations to which he was supposedly subjected, the arguments he could or would have made but for these phantom limitations, or how these unidentified limitations were prejudicial to him.

Unsubstantiated beliefs and bare speculations fail to carry the day; they certainly are not a basis for second-guessing Petitioner's knowing and voluntary waiver of Attorney LaRusso's potential conflict-of-interest, especially when viewed against the contrary declarations of Attorney LaRusso made in his comprehensive affidavit. (See LaRusso Aff. ¶¶.4-11.) Furthermore, Petitioner's post-appeal surmising is belied by the record. As discussed, the Court engaged in a Second Circuit-compliant Curcio hearing at which Petitioner was represented by separate, conflict counsel. (See supra at BACKGROUND, Part II.B.); see also, e.g., United States v. Iorizzo, 786 F.2d 52, 59 (2d Cir. 1986) (delineating the Curcio procedures[7]). The Court conducted a colloquy with Petitioner,[8] sufficiently ensuring Petitioner

---

[7] In summarizing Curcio procedures, the Iorizzo Court instructed trial courts to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

786 F.2d at 59.

[8] The Court also permitted the Government to pose questions to Petitioner, further developing the record and assuring compliance with the strictures of Curcio. (See, e.g., Curcio Hr'g Tr. at 12; see also generally id. at 4-6.)

understood the proceeding and the potential conflicts presented by Attorney Conway's limited representation of co-defendant Hardy. (See supra at 6.) It also satisfied itself Petitioner was clear-headed and had not been coerced or threatened to waive the potential conflict. (See id.) The Court further inquired whether Petitioner had any questions or needed more time to discuss the waiver with anyone else; he responded in the negative. (Curcio Hr'g Tr. 11.) Despite being advised by the Court that new counsel could be appointed if Petitioner so chose, Petitioner declined; instead, the record squarely establishes he knowingly and voluntarily waived any potential conflict that could arise in Attorney LaRusso's representation, specifically informing the Court he (Petitioner) did not "see a conflict that could hurt [his] defense from what [he was planning] to present." (Id. at 12.) Petitioner's current attempt to invalidate his waiver, based upon his present vague claims and suppositions (see, e.g., Petition at 3-5), is patently unpersuasive in light of Petitioner's prior Curcio hearing testimony, the verity of which outweighs Petitioner's current offerings. At bottom, Petitioner is unable to meet his burden of establishing ineffective assistance of counsel via his Conflict Claim arguments.

ii. The Lee-Based Challenge[9]

As part of his Trial-Based Ineffective Claims, Petitioner argues Attorney Larusso was ineffective for not requesting a proffer as to co-defendant Lee's testimony to determine whether it would violate the attorney-client privilege arising from a joint defense agreement or for not objecting to her testimony as violating that agreement. (See Support Memo at 6-7.) Neither contention is availing.

As to the proffer-based argument: There was no need to seek a proffer of evidence regarding co-defendant Lee's testimony since the Government had provided defense counsel with the FBI's Interview Reports prior to Lee's trial testimony, thereby allowing Attorney LaRusso to review same; said review established Lee's factual recollection of the relevant events of the indicted fraudulent scheme did not disclose "any privileged communications" which occurred "during the period of the joint defense agreement." (LaRusso Aff. ¶13.) Whether to request a proffer of evidence is the type of "decision[] which falls squarely within the ambit of trial strategy, and, if reasonably made,"-such as here, where Attorney LaRusso attested he "had absolutely no basis for believing that Ms. Lee would deviate from the factual narrative outlined in

---

[9] As Chartier contends, his Lee-Based Challenge and Privilege-Based Claim are intertwined. (See Support Memo at 6.) Therefore, following Chartier's lead, in this subsection, the Court addresses both these issues together.

the [Interview] Reports" (LaRusso Aff. ¶13.)-"will not constitute a basis for an ineffective assistance claim." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).

In that vein, Attorney LaRusso averred "[i]t was strategically more beneficial to await [Lee's] testimony during trial, and, at the unlikely chance [she] would disclose privileged communications during trial in front of the jury, Mr. Chartier would then object and request a mistrial for the improper disclosure of privileged communication." (LaRusso Aff. ¶13.) Such a reasonable, trial strategy is "ill-suited to hindsight condemnation." United States v. Teman, No. 19-CR-0696, 2025 WL 1766738, *10 (S.D.N.Y. June 26, 2025) (collecting cases); see also generally United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citation omitted)); Pena v. United States, 192 F. Supp. 3d 483, 490 (S.D.N.Y. 2016) (such "strategic decision[s], whether wise in retrospect or not, [are] among those professional judgment calls that are 'unchallengeable' under Strickland"). This is the type of strategic choice to which Attorney LaRusso is entitled to the deference of the habeas court; it will not serve as a basis for finding Attorney LaRusso's conduct to be constitutionally ineffective. See United States v. Yingst, 623 F. App'x 17, 21 (2d Cir. 2015) ("The standard for evaluating the adequacy of counsel's

representation is 'a most deferential one.'" (quoting Harrington, 562 U.S. at 105)).

As to the objection-based argument: "In order to succeed on a claim that counsel was ineffective by failing to object, a petitioner must posit a meritorious objection." Wolfson v. United Staes, 907 F. Supp. 2d 418, 423 (S.D.N.Y. 2012). Petitioner has not done so; instead, he offers little more than pure speculation that the subject attorney-client privilege was waived. (See Support Memo at 7.) That will not do. See generally Krasniqi v. United States, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016) (stating "self-serving, uncorroborated, and improbable assertions" are insufficient to establish ineffective assistance of counsel).

In contrast, Attorney LaRusso clarifies the state of the record, declaring "Chartier failed to provide any portion of the trial transcript of Ms. Lee's testimony to support his claim that her testimony contained privileged communications in violation of the joint defense agreement". (LaRusso Aff. ¶14; see also Opp'n at 9 (asserting "Chartier cites no testimony by [co-defendant Lee] at trial reflecting any post-arrest, privileged communications with [Chartier] or his counsel, as there is none").) Attorney LaRusso further avers, "Ms. Lee's trial testimony was based upon her recollection of events during the commission of the fraudulent activities, and she never testified to confidential communications protected by a joint defense agreement." (LaRusso Aff. ¶12.)

Certainly, Attorney LaRusso was in as good a position as Petitioner to know whether co-defendant Lee's testimony revealed confidential communications protected by the joint defense agreement and, hence, warrant an objection and/or moving for a mistrial. See, e.g., Best, 201 (stating "[c]ounsel's election to forgo an unsupported argument plainly falls into th[e] category" of trial strategies which do not constitute ineffective assistance).

At bottom, Petitioner fails to point to any evidence that co-defendant Lee breached the joint defense agreement or violated the ensuing attorney-client privilege. Given this absence, Chartier's Lee-Based Challenge is unavailing and fails to support an ineffective assistance claim against Attorney LaRusso.

iii. The Authentication Challenge

In rejecting a habeas petitioner's claims of ineffective assistance of counsel, the Honorable Alvin K. Hellerstein of the Southern District of New York stated:

> A defense attorney need not raise unsupported arguments that are destined to fail, and doing so does not constitute the ineffective assistance of counsel. Moreover, an attorney who lodges baseless objections and arguments runs the risk of diminishing his credibility in the eyes of the judge and jury, thereby hurting his client.

United States v. Kourani, Nos. 17-CR-0417, 23-CV-2265, 2025 WL 604882, at *3 (S.D.N.Y. Feb. 25, 2025) (citing Best, 219 F.3d at 201). More particularly, as to petitioner's contention his defense

counsel was ineffective for "enter[ing] into stipulations of the admissibility of various items of evidence with the Government", Judge Hellerstein found "stipulations to the admissibility of certain evidence, United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005), are matters of trial strategy, and are thus 'virtually unchallengeable.'" Id. (quoting United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004)). Accordingly, the Judge determined petitioner's ineffective assistance arguments were without merit. See id. The same result is compelled here.

As Attorney LaRusso attests, he had no legal basis to challenge the authenticity of certain business records the Government sought to introduce into evidence, since they were provided together with "certification[s] of authenticity that tracked the statutory language necessary for self-authentication pursuant to Federal Rules of Evidence, Rules 902(11) and 803(6)(A)-(C)." (LaRusso Aff. ¶15 (stating further to "lack[ing] a good faith basis to challenge either the certifications or the authenticity of the accompanying business records")); see also United States v. Conde, 134 F.4th 82, 88 (2d Cir. 2025) (discussing use of certifications to self-authenticating domestic records). In other words, challenging the authenticity of the subject records in this instance would have been an unsupported argument destined to fail; thus, Attorney LaRusso had no obligation to raise it and, by not raising it, he was not ineffective. See Kourani, 2025 WL

604882, at *3. Equally significant, Attorney LaRusso avers he "strategically decided to stipulate to the business records to avoid losing credibility with the jury and the Court by opposing the introduction of relevant and clearly admissible documents." (Id. at ¶16.) Attorney LaRusso's decision in this regard was sound trial strategy as to which Petitioner has not persuasively challenged its constitutional reasonableness. See id. Therefore, Petitioner's Authentication Challenge fails to establish his ineffective assistance of counsel claim.

b. Claims Against Attorney Brissenden

As a general matter, as to Petitioner's claims his appellate counsel, Attorney Brissenden, was ineffective for not raising issued of Attorney LaRusso's alleged ineffectiveness, the Second Circuit instructs:

> We are not inclined to resolve claims of ineffective assistance of counsel when such claims are presented for the first time by new counsel on direct appeal. See United States v. Williams, 205 F.3d 23, 35 (2d Cir. 2000) (expressing [Second Circuit]'s "baseline aversion to resolving ineffectiveness claims on direct review" except in narrow circumstances) (citation omitted); see also Massaro v. United States, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C. § 2255] is preferable to direct appeal for deciding claims of ineffective assistance.").

United States v. Jean, No. 20-3659, 2022 WL 1100433, at *3 (2d Cir. Apr. 13, 2022) (summary order). Given this inclination of

the Appellate Court, which was part of the reason for Attorney Brissenden not raising Petitioner's ineffective assistance claims upon appeal[10] (see Brissenden Aff. ¶¶8-9 (attesting that by not prematurely advancing upon direct appeal Petitioner's alleged ineffective assistance claims, avoiding prejudicing Petitioner by having him be barred from later raising those claims); see also id. at ¶7 (averring the existing record did not support Petitioner's claims)), in concert with the strong presumption afforded to Attorney Brissenden that his performance was adequate, see Strickland, 466 U.S. at 689, upon the record presented, the Court finds Attorney Brissenden's was not ineffective; hence, habeas relief on this basis is not warranted. The Court briefly elaborates, below.

i. The Conflict-of-Interest Issue

In a conclusory manner, Petitioner asserts Attorney Brissenden's "performance was deficient and resulted in severe prejudice" because he did not argue on appeal that Attorney LaRusso was subject to an unwaivable, per se conflict. (Support Memo at 8.) It is well-settled "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that

[10] Notably, in his Petition, Petitioner explained the reason he did not raise his ineffective assistance of counsel claims on appeal is because "[t]he issue [is] more appropriate for a 2255 motion." (Petition, Ground Two(c)(7), at 6.)

were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (instructing further, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). But, appellate counsel has broad professional discretion to select from among any number of non-frivolous arguments "to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000); see also generally Jones v. Barnes, 463 U.S. 745, 754 (1983); Gomez v. Brown, 655 F. Supp. 2d 332, 360 (S.D.N.Y. 2009) ("In the appellate context, it is not enough for a petitioner to simply argue that counsel did not raise certain non-frivolous arguments on appeal, as no duty to raise every such argument exists." (collecting cases)). Nor is appellate counsel ineffective for declining to raise an issue which is without merit. See, e.g., Kourani, 2025 WL 604882, at *4 (stating petitioner has no right to compel appellate counsel "to raise baseless, frivolous arguments" upon appeal) (citing Jones).

Here, as a matter of properly exercised professional judgment, Attorney Brissenden determined Petitioner's position, i.e., that Attorney LaRusso was subject to an unwaivable, per se conflict, was not supported by the law. (See Brissenden Aff. ¶6.) Attorney Brissenden's professional opinion was based upon review of binding, precedential Second Circuit case law, which "has 'limited per se conflicts to two instances: (1) where trial counsel

is not authorized to practice law or (2) where counsel is implicated in the crime for which the defendant is on trial.'" (Id. (citations omitted).) Since the record did not support either instance of a per se conflict, it would have been frivolous to raise this claim upon direct appeal; therefore, Attorney Brissenden's appellate assistance fell squarely within the constitutionally acceptable range of reasonableness. See, e.g., Kourani, 2025 WL 604882, at *4; Paulino v. Miller, No. 20-CV-5067, 2023 WL 6379776, at *13 (S.D.N.Y. Sept. 13, 2023) (collecting cases for the proposition that counsel is not ineffective for failing to bring meritless claims); see generally Brown v. New York, 374 F. Supp. 2d 314, 320-21 (W.D.N.Y. 2005) (finding appellate counsel not constitutionally ineffective in failing to argue defense counsel was ineffective for failing to make certain motions which were factually baseless, lacking in legal merit, or both). Petitioner's contrary speculative contentions woefully fail to meet the demanding Strickland strictures for establishing an unconstitutional performance and do not support habeas relief on this branch of his challenge to appellate counsel's assistance.

ii. The Lee-Based Issue

Other than his unadorned identification of "the issue of wrongful disclosure of privileged information by Stephanie Lee in violation of the [joint defense agreement]" which Attorney Brissenden did not raise on appeal, Petitioner does not present an

argument—cogent or otherwise—supporting his contention Attorney Brissenden was ineffective for this purported failure; significantly, nor has he pointed to any evidence supporting this claim. (See Support Memo at 8.) Conversely, as the Government argues, in his Affidavit, Attorney Brissenden "describes in great detail why he did not make th[is] argument[] on appeal." (Opp'n at 10.) Indeed, Attorney Brissenden did not raise the Lee-based claim for the same reason it fails to support Petitioner's claim that Attorney Brissenden was ineffective, i.e., because it "was not supported by the existing record". (Brissenden Aff. ¶¶3, 10.) In rejecting Petitioner's accusation of ineffective assistance of counsel, Attorney Brissenden asserts, because of the absence of any supporting factual allegations, it would have been frivolous of him to raise such an argument on appeal. (See id. at ¶10; see also id. at ¶11 (declaring the "trial record is devoid of any such instances" of co-defendant Lee "testif[ying] at trial as to any post-arrest privileged conversation with the Petitioner or his counsel").) The Court concurs. See generally Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (stating "competent assistance" does not require counsel to raise "meritless argument[s]"); Mayzick v. United States, No. 16-CR-0429, 2026 WL 879520, at *20 (E.D.N.Y. Mar. 31, 2026) ("[G]iven the strong presumption afforded . . . counsel that his conduct falls within the wide range of reasonable professional assistance, counsel's refusal to advance

arguments without a reasonable chance of success will not be deemed ineffective." (citing Aparicio)). Nor can the failure to make a meritless argument have prejudiced Petitioner. See, e.g., Whaley v. United States, No. 09-CR-0619, 2024 WL 2847141, at *11 (E.D.N.Y. June 5, 2024) ("counsel were not ineffective for failing to bring meritless . . . arguments without a reasonable chance of success, and, in any event, because such [arguments] were futile, [p]etitioner was also not prejudiced as a result by counsel's failure to pursue [them]"); cf. United States v. Perez-Luna, No. 07-CV-5533, 2008 WL 5170179, at *4 (S.D.N.Y. Dec. 10, 2008) (finding, where motion would have been meritless, no prejudice for failure to file it).

Petitioner's stance here is no more than an unsupported plea for an evidentiary hearing poorly disguised as a claim of ineffective assistance, "in hopes of finding such evidence." (Brissenden Aff. ¶12.) That will not do; this Court refuses to condone the use of the habeas process as a fishing expedition. Rather, upon the record presented, the Court finds the Lee-Based Issue put forth by Petitioner in support of his ineffective assistance against Attorney Brissenden abysmally fails. See Negron, 520 F. Supp. 3d at 301.

-*-*-*-

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to

be without merit.[11] At bottom, Chartier's Petition profiles as little more than "buyer's remorse". See Yick Man Mui, 614 F.3d at 57 (acknowledging ineffective assistance of counsel claims are frequently the result of "buyer's remorse"). But, given the record of this case—which contradicts the allegations, speculations, and proffered questions posed by Petitioner--and having considered the relevant case law, the Court finds Petitioner is unable to satisfy the applicable Stickland test or is otherwise unable to establish entitlement to habeas relief.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside,

---

[11] To the extent Petitioner seeks appointment of counsel (see Petition at 11), because the Court has determined an evidentiary hearing is not necessary (see supra at 25-27), it declines this request. In doing so, the Court relies upon its discussion and reasoning in its February 4, 2026 Order on Motions (hereafter, the "February 2026 Order"), which discussion and reasons are incorporated herein by reference. (See Case Docket, February 2026 Order, ECF No. 1453, at 6-9); see also Mayzick, 2026 WL 879520, at *12-13 (denying habeas petitioner appointment of counsel where petitioner's claims lacked substance and were not legally complex and the court had determined an evidentiary hearing was not necessary).

To the extent Petitioner seeks the granting of a bond pending the Court's ruling on this Petition, said request is denied as moot. In any case, for the reasons articulated in its February 2026 Order, which reasons are incorporated herein by reference, the Court finds this is not a "special case" warranting the granting of bond. (See id. at 9-11.)

or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1475) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope, and mark as "CLOSED" the corresponding civil case, Case No. 25-CV-7193.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 1, 2026
Central Islip, New York